**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

KELLY GOOLEY,

                               Plaintiff,

           v.       No. 04-CV-406
                                                         (NAM/DRH)

COMMISSIONER OF SOCIAL SECURITY,

                               Defendant.

---

**APPEARANCES:**                           **OF COUNSEL:**

NILES, PILFER & BRACY               JOHN F. NILES, ESQ.
Attorney for Plaintiff
Post Office Box 272
46-48 Cornelia Street
Plattsburgh, New York 12901

HON. GLENN T. SUDDABY         WILLIAM H. PEASE, ESQ.
United States Attorney for the       Assistant United States Attorney
   Northern District of New York
Attorney for Defendant
100 South Clinton Street
Syracuse, New York 13261-7198

**DAVID R. HOMER**
**U.S. MAGISTRATE JUDGE**

## REPORT-RECOMMENDATION AND ORDER[1]

       Plaintiff Kelly Gooley ("Gooley") brought this action pursuant to 42 U.S.C. § 405(g) seeking review of a decision by the Commissioner of Social Security ("Commissioner") finding that she was no longer entitled to disability insurance benefits under the Social Security Act (SSA). Gooley moves for reinstatement of benefits and the Commissioner cross-moves for a judgment on the pleadings. Docket Nos. 9, 10. For the reasons which

---

       [1]This matter was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(d).

follow, it is recommended that the case be remanded for the reinstatement of benefits.

## I. Procedural History

On January 22, 1992, Gooley was found disabled and began receiving disability insurance benefits pursuant to the Social Security Act, 42 U.S.C. § 401 et seq. T. 102.[2] On October 22, 1997, Gooley's case was reviewed and it was concluded that she remained disabled. T. 50-64. On February 12, 2002, the Social Security Administration found that Gooley was no longer disabled and her benefits were terminated on April 30, 2002. T. 66. Gooley requested a hearing before an administrative law judge (ALJ), T. 89, which was held on May 13, 2003 before ALJ Thomas P. Zolezzi. T.18-48. Gooley was represented by counsel. T. 94. In a decision dated July 25, 2003, the ALJ denied Gooley's claims. T. 7-17. On February 13, 2004, the Appeals Council denied Gooley's request for review, thus making the ALJ's findings the final decision of the Commissioner. T. 3-5. This action followed.

## II. Contentions

Gooley contends that the ALJ erred when he (1) accepted the opinion of a non-examining physician; (2) failed to accord the proper weight to the opinion of her treating physician; and (3) found her capable of performing work that existed in significant numbers in the national economy. The Commissioner contends that there is substantial evidence to support the ALJ's findings.

---

[2] "T." followed by a number refers to the pages of the administrative transcript filed by the Commissioner. Docket No. 8.

### III. Facts

Gooley is currently thirty-four years old, has a high school diploma, and has no previous work experience. T. 15, 17, 50. Gooley asserts that she has been disabled since January 22, 1992, due to ventricular tachycardia,[3] arrhythmia, and right-ventricular dysplasia.[4] T. 131. Gooley's benefits were terminated on April 30, 2002 due to improvement in her condition.

### IV.  Standard of Review

#### A. Disability Criteria

A claimant seeking disability benefits must establish that "he [or she] is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A) (2003).  In addition, the claimant's impairments must be of such severity that he or she is not able to do previous work or any other substantial gainful work considering the claimant's  age, education, and work experience, regardless of whether such work exists in the immediate area, whether a specific job vacancy exists, or whether the claimant would be hired if he or she applied for work. 42 U.S.C. § 1382c(a)(3)(B)

---

[3] Ventricular tachycardia is "[a]n abnormally rapid beat of the heart, from 150 to 200 beats per minute, associated with minor irregularities of the rhythm.." 6-V SCHMIDTS' ATTORNEYS' DICTIONARY OF MEDICINE 1462 (2005) [hereinafter SCHMIDTS']. Arrhythmia is "any variation from the normal rhythm of the heartbeat." DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 121 (28th ed. 1994) [hereinafter DORLAND'S ].

[4] An "abnormality of development" of the lower chamber of the heart.  DORLAND'S 519, 1815.

3

(2003).

After a claimant is found disabled, his entitlement is periodically reviewed and benefits may be terminated if there is substantial evidence that the impairment has improved to such an extent that he or she is now able to work. 42 U.S.C. §§ 421(I), 423(f)(1) (2003); Veino v. Barnhart, 312 F.3d 578, 581 (2d Cir. 2002). A finding that there has been any improvement in the beneficiary's mental or physical impairment and that the beneficiary is now able to engage in substantial gainful activity must be supported by substantial evidence. 4 U.S.C. § 423(f)(1). "A medical improvement is any decrease in the medical severity of your impairment(s) which was present at the time of the most recent favorable medical decision that you were disabled or continued to be disabled.

A determination that there has been a decrease in medical severity must be based on changes (improvement) in the symptoms, signs and/or laboratory findings associated with your impairment(s)" 20 C.F.R. § 404.1594(b)(1) (2005). Thus, in order to "determine whether medical improvement has occurred," the SSA must compare "the current medical severity of the impairment[] . . . to the medical severity of that impairment[] at the time" of the most recent favorable medical decision. Id.; 20 C.F.R. § 404.1594(b)(7). The claimant has the burden of showing entitlement to continuation of benefits. Matthews v. Eldridge, 424 U.S. 319, 336 (1976).

### B. Scope of Review

The reviewing court must determine if the Commissioner has applied the proper legal standards and if the decision is supported by substantial evidence. Machadio v.

4

Apfel, 276 F.3d 103, 108 (2d Cir. 2002). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000) (citations omitted). It must be "more than a mere scintilla" of evidence scattered throughout the administrative record. Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)); Curry v. Apfel, 209 F.3d 117, 122 (2d Cir. 2000). The ALJ must elaborate specific factors to allow the reviewing court to determine whether substantial evidence supports the decision. Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984). If the Commissioner's finding is supported by substantial evidence, it is conclusive and on review, the court cannot substitute its interpretation of the administrative record for that of the Commissioner. Yancey v. Apfel, 145 F.3d 106, 111 (2d Cir. 1998); Bush v. Shalala, 94 F.3d 40, 45 (2d Cir. 1996).

## V.  Discussion

### A. Medical Evidence

In 1988, Gooley collapsed during a basketball game and was diagnosed with ventral tachycardia. T. 295. Gooley began receiving benefits on March 1, 1992 and her impairment was considered to have met or equaled the requirements of § 11.02 and 11.03 of Appendix 1, Subpart P of Social Security Regulations No. 4. T. 13.  Since March 1992, Gooley's tachycardia attacks occurred at least two times per week with dizziness, lightheadedness, and nausea, and rendered her incapacitated for the majority of the day. T. 13. On review of disability in 1997, a hearing officer found that Gooley's impairment

5

continued to equal listing 11.03 as her condition had remained essentially unchanged since the comparison date of July 1992. T. 59-64. Gooley's medications included Zoloft for depression, Sotalol, Chlrocon and Effexor. T. 33.

Gooley was treated by Dr. John Baker, a cardiologist, from 1989 until the present. T. 26-27, 187-221, 286-88, 293-94. The impression was right ventricular dysplasia, and ventricular tachycardia, required an automatic implantable cardioverter-defibrillator (AICD).[5] T. 187. In February 2001, Gooley complained of fatigue but stated that she had been helping two basketball teams. T. 189. In August 2001, Gooley was doing quite well, her depression had improved, and Dr. Baker opined that she could do mild activities. T. 187. The cardiac examination showed no significant murmur, rub, or gallop and there was a slight systolic [6] ejection murmur. T. 189. At the time of the hearing, Gooley was seeing Dr. Baker twice a year, stated that her cardiac condition was controlled with medication, that she a had a defibrillator since 1996 which had never fired and was checked every three months, and that there were no surgical procedures that could be used for her condition. T. 28.

On May 13, 2003, Dr. Baker opined that Gooley had severe cardiomyopathy,[7] and

---

[5] "A device that is surgically implanted within the body, with electrodes placed on the ventricles (lower chambers of the heart) connected to a pulse generator placed within the abdomen. The heartbeat is continuously monitored, and an electric shock is delivered directly to the heart if ventricular tachycardia (excessively rapid heart beat) or fibrillation (rapid and irregular muscular contractions) is detected. "1-C-CG SCHMIDT'S 1890.

[6] Pertaining to the "contraction, or period of contraction, of the heart, especially that of the ventricles; sometimes divided into components, as pre-ejection and ejection periods, or isovolumic and ejection." DORLAND'S 949.

[7] "[A] general diagnostic term designating primary non inflammatory disease of the heart muscle, often of obscure or unknown etiology and not the result of ischemic,

6

life threatening cardiac arrhythmias, had an implanted cardiac defibrillator, and was capable of mild activities but could not be employed because she could not do any significant strenuous, prolonged, or stressful activity. T. 291. On August 21, 2003, Dr. Baker opined that Gooley's exercise capabilities were extremely limited and variable, and that echocardiograms have shown a significant decrease in her cardiac function, and that Gooley had a severe cardiac condition that might require cardiac transplantation. T. 294.

Gooley was treated at the Champlain Valley Physicians Hospital (CVPH) from April 12, 1996 until January 2001. T. 175-85. On April 12, 1996, it was noted that she had been stable for four years, and Gooley played basketball for ten minutes and had palpitations, lost consciousness, and went to the emergency room. T. 176. On February 28, 1998, the impression was increasing frequency of ventricular ectopy[8] of uncertain etiology. T. 175-76. A stress test from September 10, 1998 was normal with no ventricular tachycardia or chest pain. T. 170. Echocardiograms on February 20, 2001 and April 1, 2000 showed right ventricular systolic dysfunction and a question of mild right ventricular enlargement. T. 162.     On November 9, 2001, Dr. Alan Auerbach found that there was no ischemia or arrhythmia and that Gooley retained the residual functional capacity (RFC) to perform medium work which did not involve heights or hazards. T. 230. Dr. Auerbach found that Gooley no longer met any listing. T. 232. On November 21, 2001, Dr. Sateesh Goswami conducted a consultative examination of Gooley. T. 82-84. An electrocardiogram showed

---

hypertensive, congenital, valvular, or pericardial disease." DORLAND'S 268.

[8] "[D]isplacement or malposition, especially if congenital" of the ventricles of the heart. DORLAND'S 527, 1815.

7

sinus bradycardia,[9] premature atrial contractions (PAC),[10] and a possible old interseptal infarction.[11] T. 84. Gooley complained of palpitations with associated chest pain which resolved with rest and Dr. Goswami found that the chest pains were anginal and associated with palpitations. T. 81-84.

On January 31, 2002, Sally Sumerell, Ph.D., conducted a consultative examination of Gooley. T. 78-81. Gooley stated that she had experienced depression since her collapse when playing basketball in 1988. T. 79. Gooley displayed a full range of affect, was oriented in three spheres, attention, concentration, general information, and mathematical computations were within normal limits, and she had good insight and judgment. T. 80. The diagnosis was chronic adjustment disorder with mixed anxiety and depressed mood and Sumerell opined that since Gooley's physical condition was not likely to improve, it was doubtful that she would ever be able to hold regular paid employment. T. 81.

A mental RFC assessment found that Gooley was not significantly limited and could understand, remember, and carry out simple instructions, was able to interact appropriately with co-workers and supervisors, and was able to adapt. T. 240-55. A physical RFC assessment completed by Dr. Richard Weiss found that Gooley could

---

[9] "[A] slow sinus rhythm, with a heart rate of less than 60 beats per minute...it is common in young adults and athletes but is also a manifestation of some disorders." DORLAND'S 223.

[10] "Contractions of the atrai (upper chambers of the heart) occurring earlier than would be expected in heart action." 5-P SCHMIDT'S 268.

[11] A formation of "an area of coagulation necrosis in tissue due to local ischemia resulting from a obstruction of circulation of the area." DORLAND'S 837.

occasionally lift or carry fifty pounds, could frequently lift and carry twenty-five pounds, and could sit, walk, and stand for six hours with no exposures to hazards. T. 259-66.

### B. Treating Physician's Rule

Gooley contends that the ALJ violated the treating physician's rule. The Commissioner contends that the ALJ gave proper weight to the opinion of Gooley's treating physician.

> When evaluating a claim seeking an occupational disability annuity the hearing officer must look at the (1) objective medical facts and clinical findings, (2) treating physician's diagnoses and other medical opinions based on the medical facts, (3) subjective evidence of disability and pain related by claimant, and corroborating or contravening evidence of these conditions, if any, and (4) the claimant's educational background, age, and work record.

Harris v. Railroad Retirement Bd., 948 F.2d 123, 126 (2d Cir. 1991) (citing Rivera v. Schweiker, 717 F.2d 719, 723 (2d Cir. 1983)).  Gooley contends that the ALJ failed to give adequate consideration to her treating physician's determination of disability.  Under the regulations, a treating source's opinion is entitled to "controlling weight" if the Commissioner "find[s] that [it] is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record."  20 C.F.R. § 404.1527(d)(2); Shaw, 221 F.3d at 134. Before discounting the opinion of a treating source, however, the ALJ must provide "good reasons."  Schaal v. Apfel, 134 F.3d 496, 505 (2d Cir. 1998).

The ALJ is required to: assess the following factors in determining how much weight to afford that opinion: (1) the frequency of examination and the length, nature, and

9

extent of the treatment relationship; (2) the evidence in support of the opinion; (3) the opinion's consistency with the record as a whole; (4) whether the opinion is from a specialist; and (5) other relevant factors. Alder v. Apfel, No. 99-CV-136, 1999 WL 1458368, at *4 n.3 (N.D.N.Y. Aug. 13, 1999) (Mordue, J.) (citing Schaal, 134 F.3d at 504).

In points one and two of her brief, Gooley contends that the ALJ erred in accepting the opinion of a non-examining physician because it was not based on a thorough review of Gooley's medical record and was sparse and vague. Gooley also contends that the ALJ failed to give "good reasons" for the weight he accorded the opinions of the non-examining physicians and Gooley's treating physician. The Commissioner contends that the ALJ also relied on the opinion of a second non-examining physician and gave the proper weight to Gooley's examining physician.

The ALJ gave weight to Dr. Baker's opinion to the extent that it was consistent with and supported by objective medical evidence and did not accept the portion of Dr. Baker's opinion that Gooley could not be employed, a decision reserved to the Commissioner. T. 14. The ALJ did not accept the opinion of Dr. Weiss that Gooley could lift up to fifty pounds occasionally and twenty-five pounds frequently because it was contradicted by objective medial evidence but otherwise accepted the remainder of Dr. Weiss' opinion to the extent consistent with the objective medical evidence. T. 14. The ALJ did not make a finding as to the opinions of Dr. Auerbach, a non-examining physician, Dr. Goswami's examination findings, or the findings of the CVPH.

Dr. Baker treated Gooley for her cardiac condition from 1989 until the present. T. 26-27, 187-221, 286-88, 293-94. Dr. Baker concluded that Gooley had severe cardiomyopathy, life-threatening cardiac arrhythmias, could not be employed because she

10

could not do any significant, strenuous, prolonged, or stressful activity, that the objective medical findings showed a worsening in her condition, and that Gooley had a severe cardiac condition that might require cardiac transplantation. T. 291, 294. However, a physical RFC assessment completed by Dr. Weiss found that Gooley could occasionally lift or carry fifty pounds, could frequently lift and carry twenty five pounds, could sit, walk, and stand for six hours with no exposures to hazards, and was capable of medium work. T. 259-66.

The ALJ failed to accord the proper weight to Dr. Baker's opinion and the rejection of Dr. Baker's opinion with the conclusory statement that it was not consistent with the objective evidence was not a sufficiently "good reason" for rejection of a treating source's opinion.  The only opinions that the ALJ considered were of Dr. Baker, a long-time treating source, and Dr. Weiss, a non-examining physician. The ALJ did not discuss the records of Dr. Goswami and CVPH, who had examined Gooley. While Dr. Goswami did not make a finding as to Gooley's RFC, his examination revealed the presence of sinus bradycardia, PAC, and a possible old interseptal infarction. T. 84. Examinations at CVPH showed increasing frequency of ventricular ectopy, and recurrent ventricular tachycardia. T 175-76.

The findings of the treating and examination sources are consistent with the objective medical evidence that Gooley's serious and progressive heart condition prevented her from engaging in substantial gainful activity. Dr. Baker's opinion is consistent with the objective findings and the findings of Dr. Goswami and examining sources at CVPH.

Because an additional examination by a non-treating physician would not likely fill the gap created by the failure to accord the proper weight to Dr. Baker's opinion, remand

11

is not appropriate. In addition, Gooley has introduced evidence sufficient to sustain her burden of proving that she is entitled to the continuation of benefits. Accordingly, it is recommended that the case be reversed for a reinstatement of benefits.

### C. RFC

Gooley contends that there is not substantial evidence in the record to support a finding that she can engage in substantial gainful activity. The Commissioner contends that the ALJ properly determined Gooley's RFC.

RFC describes what a claimant is capable of doing despite his or her impairments. 20 C.F.R. § 404.1545(a) (2005). "RFC is determined by considering all relevant evidence consisting of, inter alia, [the claimant's] physical abilities, symptoms including pain . . . [or other] limitations which go beyond symptoms." Martone v. Apfel, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999) (Hurd, J.) (citing 20 C.F.R. §§ 404.1545, 416.945 (1991)). "RFC can only be established when there is substantial evidence of each physical requirement listed in the regulations." Smith v. Apfel, 69 F. Supp. 2d 370, 378 (N.D.N.Y. 1999) (Hurd, J.) (citing LaPorta v. Bowen, 737 F. Supp. 180, 183 (N.D.N.Y. 1990) (McAvoy, J.)). In assessing RFC, the ALJ must make findings specifying what functions the claimant is capable of performing, not simply making conclusory statements regarding claimant's capabilities. Martone, 70 F. Supp. 2d at 150. RFC is then used to determine whether the claimant can perform his or her past relevant work or other work in the national economy. State of N.Y. v. Sullivan, 906 F.2d 910, 913 (2d Cir. 1990); see generally 20 C.F.R. §§ 404.1520, 416.960 (2005).

The ALJ found that Gooley was capable of a full range of sedentary work. T. 16 Sedentary work requires that a claimant be capable of "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 416.967(a); Kamerling v. Massanari, 295 F.3d 206, 208 n.2 (2d Cir. 2002).

Here, two non-examining physicians found that Gooley could perform at least sedentary work. However, Gooley's treating physician found that because Gooley's abilities were limited and varied, she could not perform any work. Dr. Baker also found that Gooley's condition was worsening and could possibly develop into a severe cardiac condition that might require cardiac transplantation. T. 294. Dr. Baker emphasized that Gooley's condition varied and that exposure to stress could aggravate her condition. T. 291. Treatment records from CVPH show that there was increasing frequency of ventricular ectopy of uncertain etiology. T. 175-76. In addition, Gooley complained of nausea and extreme fatigue when her heart rhythm was off, which occurred at least once a week for two-to-three hours. T. 33. Echocardiograms from February 20, 2001 and April 1, 2000 showed right ventricular systolic dysfunction and a question of mild right ventricular enlargement. T. 162. In 1996, Gooley lost consciousness after having palpitations and went to the emergency room where she was admitted. T. 176. There thus is not substantial evidence in the record to support a finding that Gooley's medical condition had improved to the extent that she was no longer disabled and could perform sedentary work. The ALJ erred in this regard.

### VI. Reversal or Remand

A reviewing court has authority to reverse with or without remand. 42 U.S.C. §§ 405(g), 1383(c)(3) (1999). Remand is appropriate where there are gaps in the record or further development of the evidence is needed. Curry, 209 F.3d at 124. Reversal is appropriate, however, where there is "persuasive proof of disability" in the record and remand for further evidentiary development would not serve any purpose. Id.; see also Parker v. Harris, 626 F.2d 225, 235 (2d Cir. 1980).

Here, there is such "persuasive evidence of disability" in the record and no further development of the record appears warranted. According the appropriate weight to the opinion of Gooley's treating physician and appropriately evaluating Gooley's condition at the time in question, reversal of the ALJ's findings and remand for the reinstatement of benefits is mandated.

### VII. Conclusion

For the reasons stated above, it is hereby

**RECOMMENDED** that the decision terminating disability benefits be **REVERSED** and the case be remanded for the reinstatement of benefits.

**IT IS ORDERED** that the Clerk of the Court serve a copy of this Report-Recommendation upon the parties by regular mail.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL**

**PRECLUDE APPELLATE REVIEW.**  Roldan v. Racette, 984 F.2d 85 (2d Cir. 1993) (citing Small v. Secretary of HHS., 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

DATE: December 28, 2005
      Albany, New York

                                                  /s/ David R. Homer
                                                 United States Magistrate Judge